Morning and welcome to the 11th circuit. Today we have three cases that we will be hearing. We just remind counsel that when your time is up, we ask that you please finish up your argument. Of course, if we ask you questions to take you over that time, we do want to hear the answers. So go ahead and answer those questions. But if not, then please do finish up by the time that your time runs out. And with that, we will begin the case versus louder back. May it please court. Good morning, Frank louder back of Indian River, Michigan on behalf of appellant. Napoleon Harris. Mr. Harris raises three points on appeal. One that the district court district court erred by not conducting a de novo resentencing after the remand on what's referred to as green one. Secondly, that the maximum sentence for a generic RICO conspiracy is 20 years. And third that the district court erred in its drug quantity determination at sentencing. As to count one in green one, this court vacated all counts as to all of the appellants and remanded the case for resentencing. Specifically as to appellants Charlie green and Napoleon Harris. The court indicated in a footnote that both of those gentlemen had raised issues with their sentence, but because we vacate their sentences, those issues are moot. The case was returned back to the district court for sentencing. And there was considerable argument as to whether that meant that it was supposed to be a de novo resentencing or simply as Judge Verde put it, to disentangle the reverse counts and impose sentences consistent with what the previous court had imposed. Let me ask you a question because I think there's also a issue, which is whether any of the defendants were able to raise at this resentencing issues that they had not previously raised at the earlier sentencing. And on the one hand, we have a case called Stinson, which suggests that they could. But on the other hand, we have a case called Fialo Jacome, which came before Stinson, which says that a defendant waves issues he didn't raise in appealing his initial sentence, because he shouldn't get quote, two bites at the appellate apple, unquote. Now, that may be wrong, but it seems like we may be bound by it under the prior precedent. And I wanted to give you a chance to address that. Well, as it turns out, the only party that wanted to raise a new objection was the government. Judge Meredith said that he felt that they could not based on his idea that this was simply a resentencing taking out the reversed counts. On the other hand, at a true resentencing, if it was resentencing de novo ab initio, I would believe that everyone could raise whatever issue they wished on the second sentencing. Including introducing new evidence, perhaps in support of whatever sentence the defendants would have wanted? That was an issue I raised with Judge Meredith. And I don't feel that raising new evidence would be permitted, but certainly the appellants would be able to re-argue things that they had argued in the previous original sentencing that had been preserved both through objection at that sentencing, through the first appeal, and again on appeal. And then back again, Judge Meredith allowed us to, for record purposes, to recite the things that we had previously raised, but in many cases refused to rule on them, thinking that it was not proper for him to do so. Right. Thank you, Mr. Waterback. We'll hear next from Ms. Borghetti. Yes, good morning. My name is Attorney Ann Borghetti, and I represent Jerry W. Green, Jr. My issue is with count one, whether there was, I believe that the court erred in saying that we waived the issue of the statutory maximum penalty of a 20 versus life. I will concede that we didn't raise the specific argument in the instant appeal, but we did raise the issue in the initial brief of the sufficiency of the evidence as to the RICO conspiracy charge, and whether the RICO conspiracy was a violent felony under the elements clause. And this court took issue with the government's failure to charge a specific provision of the section 1963 in the indictment. And the government tried to save their argument by saying that the appellants were charged with this aggravated RICO conspiracy. But this court said, no, you didn't specifically plead it. And there was no notice. And you needed to do that pursuant to the rule of, I believe, 7C. So I believe that this argument is properly before the court because the instant issue was not decided absolutely or implicitly against him during his initial direct appeal. And this issue springs from the court's appellate opinion. So this all relates back to the initial direct appeal. So that is my argument. And we ask that you respectfully reverse the judgment and sentence in this case to the district court with instructions to conduct a new sentencing hearing. Thank you very much. And we will hear next from Mr. Farmer. May it please the court, Matt Farmer for Charlie Green. I would like to first address the argument on count one, that the RICO conspiracy is 20 years and not life. The issue begins really with the green opinion by this court, which acknowledges that the first time that the government argued that these defendants faced a sentence that could be as long as life on count one was in a supplemental letter following the briefing and green one. And this court acknowledged that that was the first time that the government ever asserted that this case was anything other than a conventional RICO conspiracy case with a 20 year maximum sentence. Now in this appeal, the government has four arguments. Why, despite the fact that the penalty provision 1963 a was not in the indictment and not tried before, not in the jury instructions, that there were four reasons why the government should be excused from its failure or the grand jury's failure to allege that heightens enhanced life sentence on count one. The first argument is that at the arraignment of three of the five defendants, the magistrate judge, when summarizing this very long indictment, 28 counts, um, a 23 page transcript, a arraignment that took 29 minutes. There was a one stray comment by the magistrate judge that count one carried a maximum sentence of life as opposed to 20 years. That's the government's first argument. The government's second argument is that during the thorough briefing on the 924 C counts, which was really the subject matter of the first green opinion during the extensive brief briefing in the district court, there were two instances and when the when the government again in a very, um, um, incidental fashion in a 15 page response to the defendant's motions to dismiss, um, included one sentence in that response in 15 pages that alleged that the, uh, maximum sentence for 19 for 62 count one was life, not 20 years. That's the government's second argument. Government's third argument is that in later briefing again on the 924 seat counts, not the Rico conspiracy counts, but this time is 17 page legal briefing. There was one sentence in that 17 pages in which the government, um, asserted that the maximum sentence was life, life and not 20 years. So that was the third instance of what the government says was noticed to the defendants that despite no sign in the indictment, no pleading by the grand jury that this was a life, uh, maximum count that still the defendant should have known based on these legal briefings, um, that, uh, totaled 32 pages that the defendant somehow were put on notice that despite the absence of the allegation in the grand jury's indictment, they were put on notice. And then finally, in fairness, the fourth argument is that the government assess alleges that here by the fact that the predicate sentences in Rico conspiracies, um, in count one listed the potential life sentences under Florida law, not under the federal Rico conspiracy statute, but the predicates under Florida law carried life sentences that somehow put the defendants on notice despite the absence of any penalty provision in count one that they were subject to a life sentence. Our position is none of these four theories of, of being excused from the lack of specific assertions that this was anything other than the conventional, conventional Rico conspiracy allegation put the defendants on notice. Our position is none of those four instances, um, provided an excuse to the government for the grand jury's failure to allege the enhanced life sentence that could be available if pled for count one. That's all. And you have reserved two minutes. We'll hear next from Ms. Palmer. Good morning. May it please the court. Mario Luis Palmer on behalf of Nathaniel Harris. Um, I want to focus my time on argument three of my brief, um, which is that the district court abused its discretion in failing to adequately consider and weigh Mr. Harris's age at the time of the offense in relation to count two of the superseding indictment. Harris was the youngest member of the conspiracy. He was only 14 years old when he entered the conspiracy and 19 at the time he exited the conspiracy. The bulk of his, uh, uh, relevant conduct occurred during the time he was a juvenile. The Supreme Court has repeatedly noted that under the eighth amendment, juveniles are to be treated differently for than adults for purposes of their sentencing. Harris cited this case law and the eighth amendment in his sentencing memorandum. Um, it was the eighth amendment of document 1673. The district court demonstrated through its statements that it gave Harris his age, little consideration, and this was, um, an abusive discretion. This, uh, the, um, and your argument counselor, is there any danger of a bright line rule? I mean, it seems that your argument is based on how much of the conspiracy happened when he was a minor, but then at what point are we weighing how much of the conspiracy happened when he wasn't a minor? I guess I'm just trying to figure out what the line is. Is it, is it a mathematical equation? Is it based on the severity of the activity related to the conspiracy for purposes of when it mattered or what are the considerations? I think those are all, uh, I think those are all proper considerations. Um, and should, uh, um, but fundamentally, um, the court must take into account that the individual standing before them for sentencing was 14 years old when he joined this conspiracy and 19 when he left. So the bulk of the time he was a juvenile. And in addition, and I see my time's running out, but in addition, he also presented, um, evidence of his rehabilitation in prison, which is typical of what we see with juvenile offenders. And the district court failed to adequately weigh and consider this one last note. We know that the sentencing commission is issuing amended guidelines about the weight, um, and considerations of court should take into account with juvenile offenders. And I think that's something that this court could consider in assessing this claim as well. All right. Thank you, Miss Parma. And we'll hear next from Mr Lopez. Good morning. I may please the court. Ray Lopez. I represent talent. Deontay Martin. Uh, Mr Martin, in his brief after resentencing has raised all of the issues that other council have raised specifically, uh, the one as to the maximum penalty and whether or not other arguments were waived. We obviously have the same arguments in our brief. However, our brief does have a different argument, uh, which is, uh, begins on page 31 of the, of the, of Mr. Martin's brief. Uh, and the argument essentially there is that he was improperly enhanced when he was convicted of count to which is the drug conspiracy offense. It was enhanced to a maximum of life when the maximum should have been 5 to 40 or excuse me, five at the bottom minimum up to 40 years because the government sent a notice of prior conviction prior to trial of a prior offense that, uh, that occurred within the scope of the conspiracy. Uh, this, uh, so called prior offense occurred in 2009. And the court should know that the conspiracy lasted from 2007 to 2013. The, the actual conduct was the same type of conduct encompassed, uh, within the drug charges that was part of the relevant conduct of the conspiracy. In fact, even one of the, uh, uh, instances in listed in the pre sentence report was not considered for eight 51, but the government went ahead with that one without noticing that it's the 51, uh, in the court, in, uh, judge Mary day's ruling at sentence saying on this issue, which was raised, uh, he gave what he called a provisional ruling and, uh, stated, uh, to my colleagues on the court of appeals. I apologize for not coming up with a more articulate term, but I think if I, if I did not think that this argument was waived, I would rule in favor of mr. Lopez. And he, and he aptly stated there's some mischief in the, in that thing though, because if you've got an ongoing conspiracy, you could just take that one conspiracy and pump it up into an eight 51 by just picking off individual episodes, convicting them and naming them in your eight 51 notice with when you try the enterprise as a whole, that's mischievous. And I think that that's some very important guidance here for the court because, uh, the, the, this you're on a slippery slope. If we allow the government to use convictions or conduct that is not part of the prior offense, that basically they say it is just because, well, maybe he went out and did some drug dealing after he was convicted of this prior offense that happened within the timeframe of the conspiracy. They can just start picking off anything they felt fine in the conspiracy. Uh, and, and, and that's the, the central issue, uh, of the argument begins on page 31 of the brief, which is unique to mr. Martin. And of course he, we feel very strongly of mr. Farmer's arguments and other counsel, miss for Gettys as well, that the statutory maximum, uh, what was exceeded in this instance. All right. Thank you, mr. Lopez.  We have mr. Rhodes on the phone. Yes. May it please the court, David Rhodes for the United States here. So let me begin if I may, with the last issue that was raised, uh, uh, mr. Martin's prior conviction. And the answer to that simply is that the law of this circuit is that you can include prior convictions that occurred during the course of a charge conspiracy. And that's what the, that's what happened here. His prior, uh, conviction occurred during the course of the conspiracy, but then he was released from prison. After that, he continued on with the conspiracy for more than a year. And during that time, at least one of the murders occurred during the course of the conspiracy. So this is a recidivist statute. And if he had gotten out of prison, a state prison and not rejoin the conspiracy, maybe he would have an argument then that this one shouldn't count. Maybe it wouldn't have been counted, but what we have here is someone who committed a discreet offense and was, has a prior conviction for it. And he got out and he continued on with the conspiracy. So if you look at Hansley, if they continue to engage in the conspiracy, that suffices. And if you look at Williams, it says even engaging in the conspiracy for two months after they returned from prison is enough. And here we have more than a year. Uh, we have the Brenton Coleman murder during that year. And for that reason, he is a recidivist. He has a prior sentence and the district court, although the district court mused that maybe he wouldn't have considered that his sentence was based on included that prior conviction. And that was correct. So let me go back to the beginning. When we talk about the mandate from this court and the district court's handling of that, the district court had the discretion to handle the sentencing as it did. It obviously couldn't do anything inconsistent with the court's mandate, but what it did, especially, especially with respect to the fact findings from the original sentencing was saying, I am not going to revisit these. It had no obligation to revisit those. And I think one way to look at this, we're in sort of a quirky situation because the judge from the original sentencing and the original trial, uh, retired during this time. And it came back before judge Mary day for resentencing. And if this had gone back to judge Kavakovich, if she were still on the bench, I don't think anybody, well, maybe they would be, but I don't think anybody could plausibly argue that she had to revisit everything she had done at the original sentencing. And so the fact that it came back to a different judge doesn't change that. In fact, I would argue that since judge Kavakovich had that through the trial and been there for all of that, that sort of gave the district court an additional reason not to revisit all of those findings and nothing about the remand from this court required the district court to do that. As, as people have argued in their brief, the original remand cited Fowler. And that was a resentencing package, a sentencing package case, which gave the district court the authority to revisit the sentence on one count after the Supreme court vacated the conviction on the other count. That's just a recognition that if it goes back for resentencing and circumstances have changed, the district court can take those changed circumstances into account in deciding on an appropriate sentence. It doesn't mean every finding, every decision that the district court originally made needs to be revisited anew. And it definitely does not mean that it's open season for the defendants to raise a bunch of new issues when it goes back that they didn't raise at the original sentencing and didn't raise in the original appeal. And so, uh, uh, one thing that was brought up during the appellants arguments is the first. And so I'm going to go back to the life sentence on count one, because I think that's the main issue here, uh, that has gotten people's attention. Uh, we heard, uh, from the appellants that the first time we argued that they could face a life sentence was in our supplemental brief letter brief at the end of the first appeal. That's not accurate. Of course, they were sentenced. We litigated this as though they faced a life sentence on count one because of the life sentence predicate. And that's what they were convicted of. That's what the petty jury found. That's what they were sentenced on. And through that whole initial process, nobody suggested that that wasn't an available sentence based on the grand jury's findings, which included all of those sentencing findings of life predicates, murder, kidnapping, armed robbery, or the petty jury's findings as to all of those. Once again, several of them as to most of the defendants, at least one as to every one of these defendants. And then they were sentenced that way. The issue arose, of course, once the opinion in green came out and the defendants decided, which I don't fault them for that, to assert this issue when it went back on remand. But this isn't one, this isn't an issue that they'd raised before. And it didn't spring from green if they wanted to challenge the, uh, validity of their life sentences on counts one, whether because of a pleading error, an alleged pleading error, or the lack of a fine requisite finding, they could have done that. And in fact, they did do it on an issue that we're not talking about now, by saying that the two life predicates were required in order for them to face a life sentence. But nobody argued that a life sentence wasn't available, period, because of the findings or because of the grand jury's allegations. So to me, that brings us back. I'm sorry, I can't hear you, Judge Rosenbaum. If we do get to that argument, you hear me now? Yes, yes, I do. What if we do get to that argument? Is there a difference among the different defendants here as to the government's arguments? In terms of like substantively? In terms of how they were charged? No, there isn't a difference. There isn't a difference, Your Honor. They were all charged in count one with RICO conspiracy, which, as you know, requires a RICO enterprise participation in it, and at least two predicate acts. And they were all charged with sentencing allegations of life predicates, different ones for different defendants, obviously, but all of them were charged with at least one. And all of them were found by the petty jury to have committed at least one. So I asked because it seemed like counsel for Mr. Green was suggesting that his client fell into a different category. I don't know. I don't know what that would be. I'm sorry. I, from my perspective, from our perspective, the indictment charged them all in count one, and they were all found guilty of the requisite predicate acts that entitled them or made them eligible, I should say, for the life sentences that they received. And so the, I mean, the Green opinion, that obviously is what brought this all to the forefront. So again, we don't think the court should get to that. Because if this had been brought up in the original appeal, if they had challenged these, they would have certainly been facing a plain error standard of review. And respectfully, I don't think anybody would have thought that this was plain error. And I'm not even aware of a theory under which it would constitute plain error, because we have the allegations in count one, we have the sentencing allegations from the grand jury, and we have findings click, click, click by the petty jury as to each of these defendants. And so at that point, they were life sentence eligible under the penalty provision, the RICO penalty provision. So anyway, but getting back to green, since that's what brought this up, the Green panel decided that did two things. But first, they said, we don't have to decide if there's a distinct crime of aggravated RICO conspiracy. And what we would say to that is, our issue here isn't whether there's a distinct crime of aggravated RICO conspiracy, the court, the panel decided to look at it that way, because they were trying to decide under Section 924. C, whether this distinct crime of aggravated RICO conspiracy qualified as a 924. C crime of violence, a felony punishable in a federal court that has a use or threatened use of force as an element. That's what they were looking at. Here, we're looking at some something completely different, which is whether the grand jury charged the facts necessary for a life sentence, which they did, because they found predicate life sentence facts, murder, murder, kidnapping, armed robbery, as to each of these defendants. And then under Apprendi, whether the petty jury, well, that's the first part is Apprendi also, but whether the petty jury also made those findings, which the petty jury did, they made those same findings as to each of these defendants. And that's why they went into sentencing, and they were all facing life. Nobody questioned that at the time. And so there was nothing wrong with the life sentence on count one. I don't know if there's any other issues that the court wants us to address. I know, Mr. Farmer was talking about the government's attempt to find an excuse for the failure to allege count one properly or allege a life sentence property. We do not need an excuse here that the indictment adequately charges a RICO conspiracy, and it adequately includes the facts necessary for the district court to impose a life sentence for that RICO conspiracy as to each of the defendants. And the failure to, and I'm not even convinced that's the right word to use, to cite the penalty provision is especially inapt here, when the penalty provision isn't even one like under Section 841, that distinguishes between different penalties. It's just that this is the penalty. These are the penalties. There are two penalties available for RICO conspiracy, one up to 20 years. And if there's a life sentence found up to life, and that's what happened here. So unless the, unless the, I'm sorry. I want to just change subjects for a moment. If we get to the merits of Mr. of Charlie Harris's argument that that he is not a career offender under the guidelines, would you agree that he's right about that? Um, no, I don't agree with that. And, and I, I mean, I guess I'm I agree. I'm a pardon. Wait, I can't hear you. I'm sorry. Light of what we've said in Dupree. Well, I guess what I would say to that is, if the court reaches that, um, he's right. He would be right. So let me back up. He would be right about that, but, uh, it doesn't have any effect as we've said on his sentence here. So it's a sort of a distinction without a difference here. All right. So you're saying even if that's the case, it's harmless. Correct. Correct. Your honor, because he would end up in the still at the same place, life, life, uh, level 43 regardless. So, right. So in order, in order for it to have any effect, we would also have to reach other issues and find he was correct on those other issues. Correct. Correct. So unless the court has any more questions, we ask that you affirm the judgments of the district court. Thank you. All right. Thank you. And, uh, Mr Farmer, you have reserved two minutes. Yes, your honor. Going to count to very quickly as you just mentioned the career offender issue. Um, Dupree does squarely hold that because this is an inchoate offense that this is no longer a career offender predicate. And we would also argue, um, and this was specifically preserved, um, in the green opinion, we would argue that the calculation for drugs for Mr Green was incorrect. Vastly incorrect because the jury found only one of the four substances, marijuana and found a, um, that it was only over, um, just the B one B amount of marijuana. So, um, our position now, would you agree, though? Rhodes that if we disagree on the drug quantity issue and the other issues, it has no effect on your client sentence. No, I don't agree with that. I think preliminarily you must make a finding as to whether or not this was a 40 year maximum as opposed to a life maximum. That is count one. If if you make that finding, then the drug quantity analysis, um, is based solely on drug on on marijuana, and that he's well below the 40 years. But the hypothetical I've asked, and I'm not saying this is how we've decided or how even I've decided. We haven't spoken as a panel about this case yet, and there are lots of issues in the case, but I'm just trying to figure out what you agree with and what you don't. So the question again is if we were to find that the only issue that had merit was Mr Green's decree issue, right? Um, would you agree with Mr Rhodes that that's not enough to affect Mr Green sentence? Yes. If that were the only issue we won on, yes, then it would have no effect. I would agree with that. But I'll give you another 30 seconds since I took a while asking the question. Yes, the rest of your answer. Yes. Very quickly to count one, Your could. Um, the panel opinion in green amended its opinion, and the only amendment from the second opinion added Fowler, and that was meaningful because Fowler says that once the sentencing package is open, and this is at page 10 16 of Fowler, then the contents of that package may be fully revisited upon resentencing. So the panel went out of me. Ask you again, then what do we do with theologic common, which seems to say that once which does say that once even when you go back on a resentencing, you can't raise issues that you didn't raise the first one. Well, I think your honor mentioned earlier that you will simply go to Stinson on that, though, because the prior precedent rule says we have to go with the first decided case on the issue unless and until it's either abrogated by sitting on bond or by the Supreme Court. Well, your idea. Stinson's not a not a new case. Um, there's a true, but it's newer than it, but it's newer than theologic homing, and it may well be the case that are ruling in theological me is wrong. I mean, that could certainly be the case. There are lots of other circuits that disagree. And as you pointed out, Fowler seems to say the opposite as well. But we still have it, and we have the prior precedent rule. So I just wanted to give you a chance to address that. Well, your honor, then, uh, well, it's notable that Stinson did not believe that Fiala was binding because the Stinson panel wouldn't have made the ruling in that case. But second, perhaps it's a perfect and bank times a panel over looks a prior prior. And that's substantial. Well, no, it can't overrule. Okay, I think we have your Thank you very much. And I note that counsel for all of the appellants in this case were CJA appointed. We very much appreciate your taking the appointments and the excellent work that you have done representing your points. So thank you.